IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:14-CV-482-BO

RAINBOW SCHOOL, INC.,                          )
     Plaintiff,                              )
                                         )
                                         )
v.                                             )            **O R D E R**
                                         )
RAINBOW EARLY EDUCATION                         )
HOLDING LLC and REE SOUTHEAST, INC.             )
     Defendants.                             )

This cause comes before the Court on plaintiff's first and second motions to hold

defendants in contempt of court and for award of damages and fees. [DE 62, 76]. In an oral order

announced on August 30, 2016, the Court granted plaintiff's motions and found that the

defendants were willfully and knowingly in violation of court's permanent injunction. This

written order, detailing the Court's findings, now follows.

## BACKGROUND

Plaintiff is a daycare provider in Fayetteville that has been in operation for over 20 years.

Defendant is a nationwide corporation that opened a childcare center two miles from plaintiff's

location. Defendant has over 100 centers throughout the Midwest and Southeast under a variety

of names, including Rainbow Child Care Center. All of its facilities use a Rainbow logo.

Plaintiff, which also uses a Rainbow logo, filed suit in 2014 for trademark infringement, false

advertising, and violation of North Carolina Unfair and Deceptive Trade Practices Act. The case

progressed through discovery, when, in February, 2016, the parties settled and consented to a

permanent injunction which this Court entered on February 26, 2016. [DE 61]. In that judgment,

the Court concluded as a matter of law that "the uncontested facts adequately set out a claim of

trademark infringement" and, based thereon, the Court entered a permanent injunction with

specific prohibitions relating to defendant's use of the word RAINBOW and use of a rainbow design.

On May 30, 2016, plaintiff filed its first motion to hold defendants in contempt of court and for award of damages and fees, alleging multiple violations of the court's permanent injunction by defendants. On August 2, 2016, plaintiff filed its second motion to hold defendants in contempt. A hearing on these motions was held on August 30, 2016. In an oral order at the close of the hearing, the Court granted plaintiff's motions and found that the defendants were willfully and knowingly in violation of court's order in that it willfully violated the injunction twice. Furthermore, the Court held defendant in civil contempt and announced that it would allow it to purge this by correcting the violations.

DISCUSSION

Violations of injunctions entered by this Court are punishable as contempt of court. *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 833 (1994). "There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt." *Shillitani v. United States*, 384 U.S. 364, 370 (1966). "A court may impose sanctions for civil contempt 'to coerce obedience to a court order or to compensate the complainant for losses sustained as a result of the contumacy.'" *Cromer v. Kraft Foods N. Am., Inc.*, 390 F.3d 812, 821 (4th Cir. 2004).

To establish that a finding of civil contempt is appropriate, a party must demonstrate by clear and convincing evidence:

> (1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) . . . that the decree was in the movant's "favor"; (3) . . . that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violations; and (4) . . . that [the] movant suffered harm as a result.

*Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 301 (4th Cir. 2000) (alterations in original, citation omitted).

Plaintiff has sufficiently demonstrated that a finding of civil contempt is appropriate and that defendant violated the injunction on at least two separate occasions. First, the Court finds that the consent injunction entered by the Court on February 26, 2016 constitutes a valid decree, which the defendant had actual notice of by way of both parties' signed consent to the settlement and the Court's order. Second, the Court finds that the injunction was in plaintiff's "favor" in that it prohibited defendant from operating a childcare center in the Fayetteville metropolitan area under the contested name or from utilizing the contested rainbow logo anywhere in connection with its businesses or services offered in the Fayetteville area.

In plaintiff's first motion for contempt, plaintiff demonstrated defendant's non-compliance with the permanent injunction in a number of ways. First, defendant continued using rainbow images on its Fayetteville Child Care website, in violation of Paragraph B of the Court's order.[1] Defendant posted multiple images that portrayed the infringing image in the photo gallery section of its website, as well in the online biographies of the director and assistant director of the child care center that were being used to advertise defendant's service. Plaintiff notified defendant of these violations, but the infringing images were not removed.

Plaintiff also demonstrated that defendant continued using the work "Rainbow" in connection with the Fayetteville child care business in domain names, links, and metatags used

---

[1] "Defendants and any related or affiliated entities . . . are permanently enjoined from using any rainbow design on any website or domain identifying or advertising any business or services offered by them in the Fayetteville, North Carolina metropolitan area, but this restriction imposed by this injunction does not, and is not meant in any way to, restrict or prevent the use of the word 'rainbow' or a rainbow design on the general corporate website of either of Defendants so long Defendants comply with the restrictions set forth in Sub-Paragraph D below." [DE 61].

to drive traffic to the Fayetteville child care center's website.[2] Additionally, defendant's blog on

its corporate website refers to its Fayetteville child care center and directs customers to that child

care center with reference to that center's "staff at Rainbow," and the various "Rainbow

amenities" that members of the "Rainbow Family" will be able to receive there.

Finally, plaintiff demonstrated that defendant violated the injunction by continuing to use

a web address or domain name containing the word "Rainbow" in connection with their business

in Fayetteville and by using the work "Rainbow" in links and tags on their website.[3] Each of the

three "contact" links on the website of defendants' Fayetteville child care business connected

users to an email address at fayettevillenc@rainbowccc.com, and the "Contact Us" link on this

website redirected users to their www.rainbowccc.com website. Users of the Fayetteville website

were met with a request from defendant's corporate website, www.rainbowccc.com, asking users

---

[2] "Defendants and any and all related or affiliated entities are permanently enjoined from using the word 'Rainbow' in connection with their business in the Fayetteville metropolitan area, including but not limited to use by them of the word 'Rainbow' in connection with the provision of child care, preschool, before-school, afterschool, and summer camp services in the Fayetteville metropolitan area." [DE 61].

[3] "Defendants and any related or affiliated entities are permanently enjoined from using the web address/domain name www.rainbowccc.com/fayetteville2 or any other web address or domain name using the word 'rainbow' in connection with any business or services offered by them in the Fayetteville metropolitan area, . . . but this restriction imposed by this injunction does not, and is not meant in any way to, restrict or prevent the use of the word 'rainbow' or a rainbow design on the general corporate website of either of Defendants so long Defendants comply with the restrictions set forth in Sub-Paragraph D below." [DE 61].

"Defendants shall redirect their new website with respect to any connection to the main corporate website for Rainbow Child Care Centers found at www.rainbowccc.com. The redirect shall be accomplished by creating a stand-alone web page for the child care business located at 5800 Lakewood Road, Fayetteville North Carolina ['Fayetteville Child Care Center'] and routing all links to www.rainbowccc.com through a forwarding page so that the word 'rainbow' will not appear on the standalone web page for Fayetteville Child Care Center, even as a forwarding tag. Any such links connecting to the main corporate website for Rainbow Child Care Centers shall connect only to information about Defendants' programs, curricula, and corporate policies applicable to substantially all of their child care businesses, the purpose of such links being to avoid the need to recreate that information solely for their Fayetteville Child Care Center page and there shall not be any links from the Defendants' main corporate website to the stand-alone web page for Fayetteville Child Care Center." [DE 61].

to allow "www.rainbowccc.com" to track their physical location. Plaintiff documented close to 180 instances of links and tags on defendant's website containing the word "Rainbow." Plaintiff notified defendant of these violations which were not adequately corrected, and the Court finds that these incidents constitute knowing violations of the decree.

Plaintiff, in its second motion seeking contempt and damages, demonstrated continued violations of the injunction by defendant. First, defendant continued using the prohibited web address, rainbowccc.com/fayetteville2, which contained active content and advertised their services under the "Rainbow" name. Second, defendant sent an emailed postcard to residents of the Fayetteville area, inviting recipients to attend a summer social, from their corporate email address under the "Rainbow" name. This email caused confusion among customers and defendants did not correct or rescind the invitation after being notified of the violation. The Court finds that these incidents also constitute knowing violations of the Court's decree.

Finally, the Court finds that plaintiff was harmed by defendant's violations. Harm is presumed to result from trademark infringement. *See Rebel Debutante LLC v. Forsythe Cosmetic Grp., Ltd.*, 799 F. Supp. 2d 558, 580 (M.D.N.C. 2011) ("the court will not discard the commonly-applied presumption of irreparable harm in preliminary injunction proceedings involving a trademark infringement claim"). Additionally, the parties expressly contemplated that harm would result from a violation of consent injunction, and from that apparent presumption of harm agreed on set amount of damages to be awarded upon any violation of the injunction:

> The Parties agree that any damages to Rainbow School will be inherently difficult to ascertain with certainty, particularly as those damages relate to Rainbow Schools' reputation and current and future customer relationships. Given the Parties' experience in the child care industry and the nature of the losses that may result from a breach of the permanent injunction, the Parties agree that this provision is not a penalty, but rather a reasonable measure of damages.

[DE 65-1 at ¶5].

This Court has broad discretion to craft civil contempt remedies. *See In re Gen. Motors Corp.*, 61 F.3d 256, 259 (4th Cir. 1995). Any remedy "must be remedial and compensatory and, unlike criminal contempt, nonpunitive." *Id.* The Court notes that the parties have themselves agreed upon appropriate remedial sanctions. Specifically, the parties' Settlement Agreement provides that the Court should award $30,000 to plaintiff each event that the Court finds that defendants have violated the permanent injunction, along with plaintiff's attorneys' fees associated with the filing and prosecution of a motion for contempt and damages.[4] The parties do not dispute this agreement, nor that this amount was chosen by parties with admitted "experience in the child care industry" who well understood "the nature of the losses that may result from a breach of the permanent injunction." [DE 65-1 at ¶5]. The Court finds that this is a reasonable measure of damages, as voluntarily agreed to by the parties, and that such an award of damages is merited for each motion before the Court, each of which demonstrated multiple violations of the Court's injunction.

Plaintiff also requests, and the Court has determined that it will receive, attorneys' fees. Here again, the parties expressly agreed to the award of attorneys' fees in the event of a breach of the agreement and the resultant resort to Court.[5] The question is what fees are reasonable. This

---

[4] "LIQUIDATED DAMAGES. . . . The Parties agree that if [defendants are] determined by a court of law to be in violation of any of the requirements of the permanent injunction described in Paragraph 3 above and has failed to cure the violation within the time frames provided by this paragraph then [defendants] will be jointly and severally liable to Rainbow School for liquidated damages in the amount of $30,000.00, without prejudice to such other remedies, if any, as may be available, including but not limited to an award of attorneys' fees as hereafter provided." [DE 65-1 at ¶5].
[5] "ATTORNEY'S FEES/COSTS. . . . To the extent that any action is necessary to enforce the terms of this Agreement or enforce the terms of the permanent injunction order described in Paragraph 3 above or obtain the damages described in Paragraph 4 above, the prevailing party in

Court has the discretion to determine the amount of a fee award. *Mercer v. Duke Univ.*, 30 F.

Supp. 2d 454, 466 (M.D.N.C. 2004) (citing *Hensley v, Eckerhart*, 461 U.S. 424, 437 (1983),

abrogated on other grounds by *Tex. States Teachers Assoc. v. Garland Indep. Sch. Dist.*, 489 U.S

782 (1989)). To calculate an award of attorneys' fees, the court "must first determine a lodestar

figure by multiplying the number of reasonable hours expended times a reasonable rate."

*Robinson v. Equifax Info Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009).[6] The party requesting

fees bears the burden of establishing the reasonableness of the requested rate and "must produce

satisfactorily specific evidence of the prevailing market rates in the relevant community for the

type of work for which he seeks an award." *Id.* at 244. Other facts may lead the court "to adjust

the fee upward or downward . . ." *Hensley*, 461 U.S. at 434.

Plaintiff submitted a declaration which detailed billing information to support its request

for attorneys' fees in the amount of nearly $46,201.36. [DE 95]. The Court finds that the hourly

rates requested by plaintiff are unreasonable for a number of reasons. First, by plaintiff's own

admission, the rates quoted in this declaration are higher than the amount its counsel normally

charges clients. Plaintiff's quoted rates are those charged by its counsel to clients who do not

"pay promptly and regularly on a monthly basis," but which, in this case, plaintiff's counsel

---

any such action shall be entitled to recover reasonable attorneys' fees and costs in prosecuting
such action." [DE 65-1 at ¶11].

[6] Factors to consider in determining the reasonableness of the hours and rate include:
(1) the time and labor required; (2) the novelty and difficulty of the questions; (3)
the skill requisite to perform the legal service properly; (4) the preclusion of
employment by the attorney due to acceptance of the case; (5) the customary fee;
(6) whether the fee is fixed or contingent; (7) time limitations imposed by the
client or the circumstances; (8) the amount involved and the results obtained; (9)
the experience, reputation and ability of the attorneys; (10) the "undesirability" of
the case; (11) the nature and length of the professional relationship with the client;
and (12) awards in similar cases.

*Hensley*, 461 U.S. at 430 n.3 (quoting *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714,
717–19 (5th Cir. 1974)).

voluntarily elected to charge plaintiff. [DE 95]. The Court finds that the punitive rate charged for late-paying clients is not a reasonable award in this case. Additionally, plaintiff, by simply attaching responses to a University of North Carolina request for proposals for the provision of intellectual property legal services, did not demonstrate sufficiently that the rates quoted by its counsel are the prevailing market rates for similar services performed by comparable firms in this geographic region.

The Court has considered all the facts, as well as the affidavits submitted by plaintiff. The Court has more than a quarter of a century of experience as a United States District Judge regarding the customary hourly rates for counsel in the eastern North Carolina area. Therefore, the Court finds the following rates to be reasonable: $350 per hour for attorneys Olive and McKenzie; $250 per hour for attorney Hernandez; and $100 per hour for each paralegal. *See Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994) ("A reasonable hourly rate is defined as the prevailing market rate in the relevant community."); *see also Rivers v. Ledford*, 666 F. Supp. 2d 603, 609 (E.D.N.C. 2009) (finding a fee of $300 per hour reasonable in North Carolina); *Am. Dairy Queen Corp. v. YS & J Enterprises, Inc.*, No. 5:14-CV-151-BR, 2014 WL 4055550 (E.D.N.C. 2014) (finding $430 per hour for partners and $235 per hour for associates reasonable in a trademark case); *In re Wachovia Corporation ERISA Litigation*, No. 3:09-CV-262, 2011 WL 5037183 (W.D.N.C. 2011) (using rates of $300 per hour for partners, $225 per hour for associates); *Irwin Indus. Tool Co. v. Worthington Cylinders Wisconsin, LLC*, 747 F. Supp. 2d 568, 595 (W.D.N.C. 2010) (using rates of $325–400 per hour for partners, and $225–280 per hour for associates in western North Carolina).

A fee applicant also must establish the reasonableness of the hours requested. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Plaintiffs request fees for a total of 101.4 hours

and, after reviewing the affidavits and billing statements submitted by plaintiffs, the Court finds that this is a reasonable number of hours. Plaintiff has demonstrated with sufficient particularity that the hours requested were properly billable and appropriately performed by plaintiff's attorneys.

Accordingly, the following is a tabulation of the fees for each attorney using the reasonable rates and hours as determined by the Court, which results in a fee award of $36,162.36:

| SERVICE FEES: | | | | |
|---|---|---|---|---|
| **Professional** | **Billing Status** | **Hourly Rate** | **Hours Expended** | **Total** |
| Susan Freya Olive | Attorney | $350 | 75.5 | $26,425.00 |
| David L. McKenzie | Attorney | $350 | 25.3 | $8,855.00 |
| Sofia M. Hernandez | Attorney | $250 | 0.6 | $150.00 |
| Maria T. Sventek | Paralegal | $100 | 0.5 | $50.00 |
| Laurie B. Zobel | Paralegal | $100 | 0.6 | $60.00 |
| Shelia L. Alexander | Paralegal | $100 | 5.4 | $540.00 |
| **COSTS:** | | | | |
| Travel to/from Federal Court | Mileage & parking | | | $67.56 |
| Postage to Court & Defendants | Mailing pleadings | | | $14.80 |
| **TOTAL:** | | | | **$36,162.36** |

The Court finds that an award of $36,080 in attorneys' fees is reasonable, given the extent of litigation prompted by defendants' willful violations of court orders. In crafting this remedy, the Court has carefully considered what amount will compensate plaintiff for its losses without being punitive. In arriving at an amount of $36,080 in attorneys' fees and $82.36 in costs, the Court expressly relies upon its discretion in crafting an appropriate civil contempt remedy.

## CONCLUSION

For the foregoing reasons, plaintiff's first and second motions to hold defendant in contempt of court and enforce judgement [DE 62, 76] are GRANTED and defendant is ORDERED TO PAY $82.36 in costs, $36,080 in attorneys' fees, and $60,000 in liquidated damages to plaintiff as a compensatory penalty for its civil contempt relating to the violations of the Court's order. Defendant will remain in civil contempt of court until it has demonstrated that it has corrected its violations of the Court's injunction. Motion to STRIKE [DE 90] is DENIED.

SO ORDERED, this ___ day of December, 2016.

_Terrence W. Boyle_
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE